## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **LEMUEL O. TAYLOR**, *pro se*,<br>        *Plaintiff* | |
| v. | C.A. No.: 1:18-cv-00436-WES-PAS |
| **WALTER DUFFY**, individually and in their official capacity; **JEFFERY ACETO**, individually and in their official capacity; **JUSTIN AMARAL**, individually and in their official; **OFFICER BARBER**, individually and in their official capacity; **OFFICER BASTINE**, individually and in their official capacity; **TERESA BERUBE**, individually and in their official capacity; **PATRICIA COYNE-FAGUE**, individually and in her official capacity as the Director of the **RHODE ISLAND DEPARTMENT OF CORRECTIONS**; **LYNNE DIGGINS**, individually and in their official capacity**; SIU INVESTIGATOR NUNO FIGUEIREDO**, individually and in their official capacity; **OFFICER MARVILLIE**, individually and in their official capacity; **OFFICER CALISE**, individually and in their official capacity; **OFFICER CRAIG**, individually and in their official capacity; **OFFICER PORTER**, individually and in their official; **OFFICER RODRIGUEZ**, individually and in their official capacity; and, **OFFICER SPADONI**, individually and in their official capacity,<br>        *Defendants* | **JURY TRIAL DEMANDED** |

## <u>MEMORANDUM OF LAW IN SUPPORT OF</u>
## <u>RIDOC DEFENDANTS' MOTION TO DISMISS</u>

Defendants the State of Rhode Island, Department of Corrections ("RIDOC");   Walter

Duffy, in his individual capacity and official capacity as a Captain at RIDOC ("Duffy"); Patricia

Coyne-Fague, in her individual capacity and official capacity as the Director of RIDOC ("Coyne-

Fague"); Jeffrey Aceto, in his individual capacity and official capacity as a Lieutenant at RIDOC

("Aceto"); Justin Amaral, in his individual capacity and official capacity as a Lieutenant at RIDOC

1

("Amaral"); Nuno Figueirdo, in his individual capacity and official capacity as an Investigator at RIDOC ("Figueirdo"); Dante Marovelli, III, in his individual capacity and official capacity as a Correctional Officer at RIDOC ("Marovelli"); Robert Barber, in his individual capacity and official capacity as a Correctional Officer at RIDOC ("Barber"); Brian Bastien, in his individual capacity and official capacity as a Correctional Officer at RIDOC ("Bastien"); Moses Craig, in his individual capacity and official capacity as a Correctional Officer at RIDOC ("Craig"); CO Calise, in their official capacity as a Correctional Officer at RIDOC ("Calise"); CO Rodriguez, in their official capacity as a Correctional Officer at RIDOC ("Rodriguez"); CO Spadoni, in their official capacity as a Correctional Officer at RIDOC ("Spadoni"); CO Porter, in their official capacity as a Correctional Officer at RIDOC ("Porter"); Lynn Diggins, in her official capacity an employee of RIDOC ("Diggins"); and, Teresa Berube, in her official capacity as an employee of RIDOC ("Berube") (collectively, "RIDOC Defendants") hereby file this Memorandum of Law in Support of RIDOC Defendants' Motion to Dismiss the Amended Complaint, ECF 8, of Plaintiff Lemuel O. Taylor ("Plaintiff" or "Taylor"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As grounds therefore, RIDOC Defendants assert that Plaintiff has failed to comply with Rules 8(a) or 10(b) and failed to state a claim upon which relief may be granted. Therefore, the Court must dismiss the Amended Complaint pursuant to 42 U.S.C. § 1997e(c)(2) and Fed. R. Civ. P. 12(b)(6). RIDOC Defendants pray that this Honorable Court grant RIDOC Defendants' Motion and dismiss all claims against RIDOC Defendants with prejudice.

## I.   **FACTS AND TRAVEL**

At all times material, Plaintiff was, and continues to be, an inmate incarcerated at the Adult Correctional Facilities, ("ACI") and housed at the Maximum-Security Facility. On August 9, 2018,

2

Plaintiff, proceeding *pro se* filed an illegibly handwritten Complaint, ECF 1, against nine (9) RIDOC employees.[1] On September 9, 2014, Magistrate Judge Sullivan entered a Report and Recommendation, ECF 7, that directed Plaintiff *inter alia* to file an Amended Complaint that comply with Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure, subject to the following formatting requirements:

1. Plaintiff must set forth the claim in separately-numbered paragraphs, with each paragraph limited to a single set of circumstances;
2. Plaintiff must connect each defendant to a specific set of facts so that a reader can understand what each defendant is accused of;
3. Plaintiff should use print large enough to be read; and
4. Plaintiff should use one-inch margins so that the words on the edge of the page are not obliterated when each page is copied.

ECF 7. On December 10, 2018, Plaintiff filed a handwritten Verified Amended Complaint, naming an additional eight (8) defendants—almost doubling[2] the total number of defendants—and now asserts claims against seventeen (17) Defendants in their individual capacities and in their official capacities as RIDOC employees. ECF 8. On or about November 16, 2018, RIDOC Defendants filed a Motion for Enlargement of Time, requesting that RIDOC Defendants be given additional time to respond to the Amended Complaint, up to and including December 31, 2018. ECF 17.

On November 11, 2018, Plaintiff sent an *ex parte* handwritten letter,[3] ECF 19, to the Court, in an effort to inform the Court "on a frew [sic] things as well ask you some questions pertaining

---

[1] The Complaint was "largely unreadable and what is readable is very difficult to comprehend" and required several attempts to decipher before ultimately determining that it was "impossible to ascertain which defendants are being accused of which actions or inactions." ECF 7 at 3. The Complaint was deficient because it failed "to set forth the 'who, what, when, where, and why' information that are essential for a plausible claim." *Id.* (citing *Kilby v. Johnson & Wales Univ.*, No. CA 14-217 ML, 2014 WL 2196942, at *2 (D.R.I. May 27, 2014)).

[2] The number of additional defendants is almost quadrupled when considering that Inmate Taylor's Amended Complaint names all Defendants in both their official capacities as RIDOC employees and in their individual capacities. ECF 8 at 3, ¶ 9.

[3] Inmate Taylor did not send a copy of the letter to the Rhode Island Office of the Attorney General and such communication should be considered *ex parte*.

3

[sic] to my case...." In the Letter, Plaintiff requests that the Court "send any legal mail from yo [sic] office to my jail house lawyer … Victor Tavares…."[4] *Id.*

To date, Plaintiff has not requested or moved for leave of court to file a second amended complaint to correct the deficiencies still present in the Amended Complaint. Therefore, this Court should grant RIDOC Defendants' Motion and dismiss the Amended Complaint.

## II.    <u>STANDARD OF REVIEW</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a claim for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). The pleadings need not contain "detailed factual allegations" but must provide "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555.

Conducting a plausibility inquiry requires a two-step pavane. *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 45 (1st Cir. 2012). The first step demands the court "separate the complaint's factual allegations (which must be accepted as true) from its conclusory allegations (which need not be credited)." *A.G. v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013). The second step then requires the court determine whether the remaining factual allegations allow a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also In re Loestrin 24 Fe Antitrust Litig.*, 814 F.3d 538, 549 (1st Cir. 2016) (dismissal under Rule 12(b)(6) is reviewed *de novo*).

---

[4] For the sake of clarity, Inmate "Victor Tavares" is not actually a lawyer or licensed to practice law in Rhode Island.

For purposes of Rule 12(b)(6), while the court may draw upon experience and common sense, the court is limited to consider only those matters contained within the pleadings. Fed. R. Civ. P. 12(d). Matters contained within the pleadings include "facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." *Rederford v. US Airways, Inc.*, 589 F.3d 30, 35 (1st Cir. 2009) (citing *Jorge v. Rumsfeld*, 404 F.3d 556, 559 (1st Cir. 2005)). The reviewing court need not, however, consider new factual allegations set forth in the plaintiff's opposing memorandum, because "[a]ssertions in an opposition to a motion [to dismiss] are not the equivalent of factual pleadings … and would deprive the defendant[ ] of clear notice of the allegations...." *Emrit v. Universal Music Grp., Inc.*, No. CA 13-181-ML, 2013 WL 3730423, at *1 (D.R.I. July 12, 2013) (quoting *Steele v. Turner Broadcasting System, Inc.*, 607 F.Supp.2d 258, 263 (D.Mass.2009)).

## III.   ARGUMENT

Plaintiff's Amended Complaint, even when fairly read and liberally construed, is difficult to comprehend what causes of action Plaintiff attempts to allege. For example, the very first allegation in the Amended Complaint states, "This is a civil action authorized by 42 U.S.C. Section 1985 to redress the deprivation, under the color of state general law, of rights secured by the Constitution of the United States." ECF 8 at ¶ 1. Despite a very clear citation and reference to § 1985, nowhere does the Amended Complaint allege a conspiracy that two or more RIDOC employees acted in concert to somehow deprive Plaintiff of his civil rights. *See generally* 42 U.S.C. § 1985 (requiring at least two persons to form a conspiracy). Rather, Plaintiff's Amended Complaint is more of an *ad hoc* list of miscellaneous allegations against a significant number of RIDOC Defendants. These miscellaneous allegations are barred by the Prison Litigation Reform Act, 42 U.S.C. § 1977e ("PLRA"), as the Amended Complaint fails to allege that Plaintiff

5

exhausted all available administrative remedies by following any of RIDOC's established grievance procedures.[5] If Plaintiff's miscellaneous allegations were proper under the PLRA, he cannot overcome RIDOC Defendants' claims of qualified immunity, as the Amended Complaint does not allege that RIDOC Defendants acted in bad faith to deprive Plaintiff of a clearly established constitutional right. Irrespective of these issues, the Amended Complaint nevertheless falls far short of Rule 8 and the pleading standard, as none of Plaintiff's allegations give any notice whatsoever as to the type of claim and against whom said claim is alleged.

## A. PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AND THE AMENDED COMPLAINT MUST BE DISMISSED UNDER THE PRISON LITIGATION REFORM ACT.

The Prison Litigation Reform Act provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted

42 U.S.C. § 1977e(a). According to RIDOC's established grievance procedures, grievances may only contain a single grievable subject matter and must include the date the alleged incident occurred, the facility where the alleged incident, and the reasonable relief requested by the inmate. See 13.10-2 DOC. Inmate grievances are divided into "levels" to simplify the procedure for inmates and resolve grievances effectively and efficiently. At "Level 1", grievances are submitted on a form available to all inmates to the grievance officer at the facility where the inmate is housed.

---

[5] RIDOC inmate grievance procedures are codified administrative regulations adopted by the Director of RIDOC pursuant to R.I. Gen. Laws § 42-56-10 and are a matter of public record and therefore susceptible to judicial notice. *See In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003) (quoting *Boateng v. InterAmerican Univ.*, 210 F.3d 56, 60 (1st Cir. 2000) ("a court 'may look to matters of public record in deciding a Rule 12(b)(6) motion.'"). Therefore, RIDOC Defendants respectfully request that this Court take judicial notice of RIDOC's inmate grievance procedures, so as not to convert RIDOC Defendants' Rule 12(b)(6) Motion to a Rule 56 motion for summary judgment. *See id.*

13.10-2 DOC(IV)(E). Once the grievance is investigated and a decision issued, the inmate may appeal the grievance to "Level 2" if the inmate is not satisfied. 13.10-2 DOC(IV)(E)(5). At "Level 2" the grievance the RIDOC grievance coordinator reviews the grievance being appealed and conducts a secondary investigation. 13.10-2 DOC(IV)(E)(6). Following the secondary investigation, the grievance coordinator issues a written decision. 13.10-2 DOC(IV)(E)(6). Only after the grievance coordinator issues the final written decision is the grievance subject to judicial review by the federal courts. See 42 U.S.C. § 1977e.

The Amended Complaint alleges several ambiguous "legal claims" against RIDOC Defendants. See ECF 8 at ¶¶ 23-32. There is no question that RIDOC has an established grievance procedure available to all inmates as an administrative remedy. *See generally* DOC 13.10-2. The Amended Complaint, however, does not allege that Plaintiff has utilized RIDOC's grievance procedure or otherwise exhausted all administrative remedies available to him in connection with the facts alleged against each RIDOC Defendant. While Plaintiff vaguely mentions that "all attempts to redress my grievances have been denied", ECF 8 at ¶ 20, the Amended Complaint fails to identify the subject or date of any grievances filed and provides no indication which allegations Plaintiff purportedly filed grievances concerning and against whom they were allegedly filed. Rather, the Amended Complaint appears as a compilation of Plaintiff's general dissatisfaction with prison life.

Therefore, because Plaintiff failed to exhaust all administrative remedies, the Court should grant RIDOC Defendants' Motion and dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. § 1997e.

## B. RIDOC DEFENDANTS ARE IMMUNE UNDER THE DOCTRINE OF QUALIFIED IMMUNITY AND THE AMENDED COMPLAINT MUST BE DISMISSED.

Plaintiff's claims for money damages against RIDOC Defendants are precluded by the

doctrine of qualified immunity.

The qualified immunity doctrine provides defendant public officials an immunity from suit and not a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982) (recognizing that qualified immunity exists not only to shield officials from liability for damages, but also to protect from "the general costs of subjecting officials to the risks of trial—of discretionary action, and deterrence of able people from public service."). For this reason, immunity is to be resolved at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). In some cases, the doctrine ensures that insubstantial claims against government officials will be resolved before discovery. *Anderson v. Creighton*, 483 U.S. 635, 640, n.2 (1987); *see also Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). The *Harlow* standard of qualified immunity precludes a plaintiff from alleging the official's malice in order to defeat a qualified-immunity defense. *Anderson v. Creighton*, 483 U.S. 635, 657 n.12 (1987).

The doctrine of qualified immunity precludes suits for money damages against state officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The First Circuit employs a two-step analysis to determine whether a plaintiff's claim may breach a public official's qualified immunity. *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) ("[W]e now adopt the Court's two-part test and abandon our previous usage of a three-step analysis."). Accordingly, when making an objective reasonableness determination, a court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). The second

step, in turn, has two aspects: (a) the first focusing on the clarity of the law at the time of the alleged civil rights violation and (b) the second focusing more concretely on the facts of the particular case and whether a reasonable defendant would have understood that this conduct violated the plaintiffs' constitutional rights. *Id.* (citing *Anderson*, 483 U.S. at 640). That is to say, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established[6] is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id.</u> (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). In other words, an officer's claim of qualified immunity will be defeated if, "in light of pre-existing law" the unlawfulness of the officer's conduct was "apparent." *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Bilida v. McCleod*, 211 F.3d 166, 174 (1st Cir. 2000) (noting that qualified immunity leaves "ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law."); *DeAbadia v. Izquierdo Mova*, 792 F.2d 1187, 1193 (1st Cir. 1986) ("*Harlow* demands not prescience, but subjective good faith.").

In the instant matter, Plaintiff's Amended Complaint goes no further than alleging general complaints against various RIDOC Defendants. For the sake of clarity, RIDOC Defendants will address the allegations against each defendant in turn.

### 1.  Defendant Craig is entitled to qualified immunity.

To satisfy the first requirement, Plaintiff must allege an actual deprivation of his Eighth Amendment rights, beyond just a conclusory allegation. *A.G. v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (noting that conclusory allegations in a complaint "need not be credited" under the Rule

---

[6] This Court should be mindful, in determining what law is "clearly established" for qualified immunity purposes, that the vast majority of state officers are not lawyers and rely on the relevant guidance of others in the conduct of their duties. They cannot be expected to be "seers in the crystal ball of constitutional doctrine" any more than "high state officials." *Westberry v. Fisher*, 309 F.Supp. 12,17 (D. Me. 1970).

12(b)(6) standard). Accordingly, to show an actual deprivation of his Eighth Amendment rights, Plaintiff must allege sufficient facts to show that Defendant Craig called Plaintiff a "snitch" with "deliberate indifference to a substantial risk of serious harm." *See* U.S. Const. Amend VIII; *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (recognizing that the Eighth Amendment requires prison officials to protect inmates from a substantial risk of harm at the hands of fellow inmates).

In connection with Defendant Craig, the Amended Complaint alleges that:

> Defendant Craig orchastrated [*sic*] an assault led by two inmates on [Plaintiff] when he told said inmates, and others, a malicious slander, that [Plaintiff] was a [*sic*] out of state "snitch" and was "working with" investigators in September of 2017.
>
> * * *
>
> "Defendant Craig is liable for causing" an "a-typical-and-significant hardship" for Plaintiff by using "inflammatory language that result [*sic*] in my person beginning [*sic*] assaulted in violation of the 8th Amendment."

ECF 8 at ¶¶ 13, 23 (quotations in original). The Amended Complaint does not provide any additional facts concerning Defendant Craig. Looking past the conclusory allegations, scant facts alleged in no way show that a "substantial risk of serious harm" existed and that Defendant Craig acted with "deliberate indifference." *See Farmer*, 511 U.S. at 833. Plaintiff does not even allege that he suffered injuries, let alone serious harm as a result of the alleged "assault led by two inmates." *See* ECF 8 at ¶¶ 13, 23. Nor does Plaintiff allege that Defendant Craig somehow knew or should have known about a "substantial risk of serious harm" and consciously disregarded such a risk. *See* ECF 8 at ¶¶ 13, 23. Because Plaintiff fails to allege an actual deprivation of his Eighth Amendment rights and that Defendant Craig acted with "deliberate indifference," Defendant Craig is entitled to qualified immunity and therefore, all claims against Defendant Craig must be dismissed.

10

### 2.   Defendant Duffy is entitled to qualified immunity.

In connection with Defendant Duffy, the Amended Complaint alleges that Defendant Duffy "consistently harassed my [*sic*] first by destroying a bulk of my legal work, legal mail, personal mail, pictures, personal property such as: TV, radio, headphone [*sic*] boots clothes…." ECF 8 at ¶ 14. Plaintiff also alleges that Defendant Duffy sent Plaintiff to "isolation or disciplinary confinement" when challenging Defendant Duffy. Id. According to Plaintiff, "Defendant Duffy is liable for destroying my property without my consent or due process of the law in violation of the 14th amendment and causing emotional distress through harassment in violation of the 8th amendment." ECF 8 at ¶ 24.

To show an actual deprivation of his Eighth Amendment rights, Plaintiff must allege sufficient facts to show that Defendant Duffy acted with "deliberate indifference to a substantial risk of serious harm." *See* U.S. Const. Amend VIII; *Farmer*, 511 U.S. at 833. Much like the allegations against Defendant Craig, Plaintiff only alleges vague and conclusory allegations against Defendant Duffy. *See* ECF 8 at ¶¶ 14, 24. The scant allegations against Defendant Duffy cannot satisfy both requirements needed to overcome qualified immunity. *See Nelson*, 242 F.3d at 33; *Abreu-Guzman*, 241 F.3d at 33. Additionally, though Plaintiff attempts to cite several constitutional provisions in his "Legal Claims" against Defendant Duffy, ECF 8 at ¶ 24, Plaintiff fails to allege the deprivation of a clearly established constitutional right under any of those provisions. Merely being called "snitch" does not trigger the due process clause, *see Paul v. Davis*, 424 U.S. 693, 711–12 (1976) (holding that the interest in one's reputation is not a constitutionally protected right), or constitute "cruel and unusual punishment" under the Eighth Amendment absent a "deliberate indifference to a substantial risk of serious harm," *see Farmer*, 511 U.S. at 833; nor is there a "clearly established constitutional right" to possess contraband in a maximum-security prison. *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 332 (2012) ("Contraband is any item that

is possessed in violation of prison rules…. Everyday items can undermine security if introduced into a detention facility.") (internal citations omitted). Regardless, nowhere does Plaintiff allege an actual deprivation of his Eighth Amendment rights and that Defendant Duffy acted with "deliberate indifference." Thus, Defendant Duffy is entitled to qualified immunity and all claims against Defendant Duffy should be dismissed.

### 3.    Defendant Bastine is entitled to qualified immunity.

In connection with Defendant Bastine, the Amended Complaint alleges that Defendant Bastine showed Plaintiff "a tattoo of a noose" and told Plaintiff "that it represented 'hang nigger'". ECF 8 at ¶ 15. According to the Amended Complaint, "Defendant Bastine is liable for causing emotional distress through threats and the use of graphic language with the intent to intimidate in violation of the 8th Amendment." ECF 8 at ¶ 25.

To show an actual deprivation of his Eighth Amendment rights, Plaintiff must allege sufficient facts to show that Defendant Bastine acted with "deliberate indifference to a substantial risk of serious harm." *See* U.S. Const. Amend VIII; *Farmer*, 511 U.S. at 833. The single allegation against Defendant Bastine cannot satisfy both requirements needed to overcome qualified immunity. *See Nelson*, 242 F.3d at 33; *Abreu-Guzman*, 241 F.3d at 33. Assuming *arguendo* Plaintiff's allegation is true, while such a statement may be insulting and offensive "graphic language" alone cannot constitute "cruel and unusual punishment", *see* U.S. Const. Amend. VIII, as there is no constitutional right to be free from spoken words or offense. *See* U.S. Const. Amend. I. In the context of damages, the Amended Complaint merely alleges that Plaintiff suffered "emotional damages" from hearing the alleged "graphic language". *See* ECF 8 at ¶ 25. Regardless, nowhere does Plaintiff allege an actual deprivation of his Eighth Amendment rights and that Defendant Bastine acted with "deliberate indifference." Thus, Defendant Bastine is entitled to

qualified immunity and all claims against Defendant Bastine must be dismissed.

### 4. Defendant Barber is entitled to qualified immunity.

In connection with Defendant Barber, the Amended Complaint alleges that Defendant Barber called Plaintiff a "snitch" and "threatened to break my jaw, then he conduct [*sic*] a cell search which led to the loss and damage of my cosmetics and garments." ECF 8 at ¶ 16. According to Plaintiff, "Defendant Barber is liable for causing emotional distress through the use of threats and graphic language with the intent to intimidate in violation of the 8th Amendment." ECF 8 at ¶ 25.

To show an actual deprivation of his Eighth Amendment rights, Plaintiff must allege sufficient facts to show that Defendant Barber acted with "deliberate indifference to a substantial risk of serious harm." *See* U.S. Const. Amend VIII; *Farmer*, 511 U.S. at 833. The single allegation against Defendant Barber cannot satisfy both requirements needed to overcome qualified immunity. *See Nelson*, 242 F.3d at 33; *Abreu-Guzman*, 241 F.3d at 33. The Amended Complaint fails to provide any context or facts showing how, why, or when Defendant Barber allegedly "threatened" to break Plaintiff's jaw. Such a baseless assertion cannot possibly overcome qualified immunity.[7] Assuming *arguendo* the remaining factual allegations against Defendant Barber are true, there is no clearly established right under the Eighth Amendment to be free from being called a "snitch" or to possess contraband in a maximum-security prison. *See Schofield v. Clarke*, 769 F. Supp. 2d 42, 50 (D. Mass. 2011) (dismissing an Eighth Amendment claim where the plaintiff failed to allege facts showing that the defendants acted with "deliberate indifference" in labeling the plaintiff a "snitch"). Accordingly, because Plaintiff fails to allege an actual deprivation of his

---

[7] It should also be noted that the Amended Complaint does not allege that Defendant Barber actually struck or physically harmed Plaintiff in any way.

Eighth Amendment rights and that Defendant Barber acted with "deliberate indifference," Defendant Barber is entitled to qualified immunity. Therefore, all claims against Defendant Barber must be dismissed.

### 5.   Defendant Amaral is entitled to qualified immunity.

In connection with Defendant Amaral, the Amended Complaint alleges that Plaintiff reported the alleged "incident" in connection with Defendant Barber to Defendant Amaral "who told [Plaintiff] that he would investigate" but later that night, Defendant Barber returned and continued "harassing" Plaintiff. ECF 8 at ¶ 17. The Amended Complaint does not identify any additional facts whatsoever related to Defendant Armaral. Nevertheless, according to Plaintiff, Defendant Amaral "is liable for negligence, he had been informed of Defendant Barber's actions." ECF 8 at ¶ 27.

To hold a supervisor liable for a subordinate's negligence, the plaintiff must show that (1) the subordinate's behavior results in a constitutional violation and (2) the supervisor's action or inaction was "affirmatively linked" to the behavior in that it could be characterized as "supervisory encouragement, condonation or acquiescence" or gross negligence amounting to "deliberate indifference." *Hegarty v. Somerset Cnty.*, 53 F.3d 1367, 1379–80 (1st Cir. 1995); *see also Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994) (requiring causal link between supervisor's behavior and subordinate's conduct). Mere negligence is inadequate to establish supervisory liability. *Febus–Rodriguez v. Betancourt–Lebron*, 14 F.3d 87, 92 (1st Cir. 1994); *see also Schofield v. Clarke*, 769 F. Supp. 2d 42, 51 (D. Mass. 2011).

Here, Plaintiffs' Amended Complaint fails entirely to allege that Defendant Amaral did anything or that Plaintiff even sustained damages. One thing is for certain, Plaintiff does not allege that Defendant Amaral acted with gross negligence amounting to "deliberate indifference" or that

14

Defendant Amaral deprived Plaintiff of a clearly established constitutional right. Therefore, Defendant Amaral is entitled to qualified immunity and all claims against Defendant Amaral must be dismissed.

### 6.  Defendant Marvillie is entitled to qualified immunity.

In connection with Defendant Marvillie, the Amended Complaint alleges that escorted Plaintiff to the dentist in April 2018 and "compliment[ed] [Plaintiff] on [Plaintiff]'s muscular definition then proceeded to caress and squeeze my bi-ceps, which he did then repeated leery remarks and continued touching me, which [Plaintiff] then reported…." ECF 8 at ¶ 18. According to Plaintiff, "Defendant Marvillie is liable for sexual harassment and unwanted touch." ECF 8 at ¶ 28.

To show an actual deprivation of his Eighth Amendment rights, Plaintiff must allege sufficient facts to show that Defendant Marvillie acted with "deliberate indifference to a substantial risk of serious harm." *See* U.S. Const. Amend VIII; *Farmer*, 511 U.S. at 833. Alternatively, to be actionable under Title VII, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998). Courts must look "at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance…." *Id.*

Here, assuming Plaintiff's allegations against Defendant Marvillie to be true, a single comment about a person's muscular physique cannot rise to the level of pervasive sexual harassment.[8] In fact, Plaintiff does not even allege a sexual component in his allegations. *See* ECF

---

[8] In addition, an allegation of sexual assault by a corrections officer clearly falls within the ambit of a grievable

8 at ¶ 18. Nor does Plaintiff allege that he suffered an actual deprivation of a clearly established constitutional right and that Defendant Marvillie acted with "deliberate indifference" and that Plaintiff was somehow injured as a result. *See Farmer*, 511 U.S. at 833. Thus, because Plaintiff does not allege that Defendant Marvillie's conduct somehow "violated clearly established statutory or constitutional rights of which a reasonable person would have known," Defendant Marvillie is entitled to qualified immunity. *See Harlow*, 457 U.S. at 800. Therefore, all claims against Defendant Marvillie must be dismissed.

### 7. Defendants Calise, Porter, Spadoni, Berube, Diggins are entitled to qualified immunity

In connection with Defendants Calise, Porter, Spadoni, Berube, and Diggins, Plaintiff alleges that:

> In late July 2018 Defendant Calise moved [Plaintiff]'s property to another cell with duely [*sic*] informing and left my legal work in said cell the [*sic*] moved a highly volital [*sic*] inmate into the cell and began to read [Plaintiff]'s legal work and accuse [Plaintiff] of being a "snitch"; said inmate made several open threats which were brought to the attention of Defendants Porter, Calise, Spadoni, Teresa Berube, Lynn Diggins and SIU Investigators,[9] yet this inmate still managed to assault me in the beginning of August.

ECF 8 at ¶ 19. According to Plaintiff, "Defendants Calise, Porter, Spadoni, Teresa Berube, Lynn Diggins, [and] Investigator Figueroa [*sic*] are liable for negligence which resulted in the assault of Plaintiff Taylor." ECF 8 at ¶ 29.

Accordingly, to show an actual deprivation of his Eighth Amendment rights, Plaintiff must

---

offense, and Plaintiff does not allege that he filed a formal grievance, and if so fully exhausted the grievance procedures available to him in such circumstances. See 13.10-2 DOC(IV)(E); 42 U.S.C. § 1977e(a). Plaintiff merely alleges that Plaintiff "reported [Defendant Marvillie] only to learn that this officer has several reprimands for this type of behavior." ECF 8 at ¶ 18. Plaintiff makes no mention of a formal grievance filed and Plaintiff's claim against Defendant Marvillie is also barred by 42 U.S.C. § 1977e(a).

[9] It is unclear whether Plaintiff intends to include Defendant Figueiredo in this allegation, as he is not mentioned in paragraph 19, but is mentioned in paragraph 29.

allege sufficient facts to show that Defendants Calise, Porter, Spadoni, Berube, Diggins, and Figueiredo acted with "deliberate indifference to a substantial risk of serious harm." *See* U.S. Const. Amend VIII; *Farmer*, 511 U.S. at 833 (recognizing that the Eighth Amendment requires prison officials to protect inmates from a substantial risk of harm at the hands of fellow inmates). To the contrary, Plaintiff not only fails to allege facts that RIDOC Defendants acted with such deliberate indifference, but that Defendants Calise, Porter, Spadoni, Berube, Diggins, and Figueiredo acted only negligently, which cannot overcome a public official's qualified immunity. *See Bilida v. McCleod*, 211 F.3d 166, 174 (1st Cir. 2000) (noting that qualified immunity leaves "ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law."). Thus, Defendants Calise, Porter, Spadoni, Berube, Diggins, and Figueiredo are entitled to qualified immunity and all claims against Defendants Calise, Porter, Spadoni, Berube, Diggins, and Figueiredo must be dismissed.

### 8. Defendant Rodriguez is entitled to qualified immunity.

To defeat Defendant Rodriguez's grant of qualified immunity, Plaintiff must allege sufficient facts to demonstrate an actual deprivation of a clearly established constitutional right and that Defendant Rodriguez knew his conduct was unlawful in depriving Plaintiff of that right. *See Mitchell*, 472 U.S. at 526.

In connection with Defendants Rodriguez the Amended Complaint alleges that: "Defendant Rodriguez continuously loses or misplaces [Plaintiff's] property and legal work as the property room officer and all attempts to redress [Plaintiff's] grievances have been denied." ECF 8 at ¶ 20. Plaintiff summarily concludes, "Defendant Rodriguez [*sic*] is liable for the loss of [Plaintiff's] property." Notably, Plaintiff does not identify what property Defendant Rodriguez allegedly misplaced or when it was allegedly misplaced, does not allege how Plaintiff was

constitutionally entitled to possess said property in a maximum-security penitentiary, does not allege that Defendant Rodriguez intentionally misplaced Plaintiffs' property, and does not allege that Plaintiff filed a formal grievance against Defendant Rodriguez. Rather, Plaintiff alleges general allegations that Defendant Rodriguez, as the "property room officer" has occasionally lost or misplaced Plaintiff's property. *See* ECF No 8 at ¶ 20. Assuming the facts alleged as true, that Defendant Rodriguez did deprive Plaintiff of some unknown property, there are no facts alleged that support that Plaintiff is clearly constitutionally entitled to possess such property in the ACI, Defendant Rodriguez of the constitutional protection, and that Defendant Rodriguez intentionally deprived Plaintiff of such property anyway. Thus, Defendant Rodriguez is entitled to qualified immunity. Therefore, all claims against Defendant Rodriguez must be dismissed.

### 9.   Defendants Aceto and Coyne-Fague are entitled to qualified immunity.

To defeat Defendants Aceto and Coyne-Fague's qualified immunity, Plaintiff must allege sufficient facts to demonstrate an actual deprivation of a clearly established constitutional right and that Defendants knew his conduct was unlawful in depriving Plaintiff of that right. *See Mitchell*, 472 U.S. at 526.

In connection with Defendants Aceto and Coyne-Fague, the Amended Complaint alleges that: "All attempt [*sic*] to contact Defendants Aceto and Coyne-Fague have been met with denials or complete indifference at my attempts to redress my grievences [*sic*]." ECF 8 at ¶ 21. Plaintiff summarily claims that "Defendants Aceto and Coyne Fague [*sic*] are both liable for negligence which continues to result in Plaintiff's significant hardship, assaults on his person and loss of property." ECF 8 at ¶ 31. Like all RIDOC Defendants discussed *supra*, Plaintiff again fails to allege any facts of an actual deprivation of a clearly established constitutional right and that Defendants Aceto and Coyne-Fague acted intentionally in depriving Plaintiff of that right. *See*

*Mitchell*, 472 U.S. at 526. Moreover, Plaintiff arbitrarily concludes that "Defendants Aceto and Coyne Fague [sic] are liable for negligence," without pleading any facts whatsoever indicating that Defendants Aceto and Coyne-Fague were aware of any unconstitutional behavior and condoned or acquiesced to such unlawful conduct, rising to the level of gross negligence. *See Hegarty*, 53 F.3d at 1379–80; *Maldonado–Denis*, 23 F.3d at 582 (requiring causal link between supervisor's behavior and subordinate's conduct); *Febus–Rodriguez*, 14 F.3d at 92 (noting that mere negligence is inadequate to establish supervisory liability). There are simply no facts alleged that RIDOC Defendants violated any of Plaintiff's clearly established constitutional rights, even if there were facts alleging the violation of such a right, there are certainly no facts establishing that Defendants Aceto and Coyne-Fague had any involvement in such violations. *See Hegarty*, 53 F.3d at 1379–80; *Bellamy v. McMickens*, 692 F. Supp. 205, 215 (S.D.N.Y. 1988) (holding that a Department of Corrections director and prison warden were not liable to inmate in civil rights action arising out of alleged assault of inmate where inmate set forth only one incident where alleged negligence resulted in injury to him, and one incident did not establish gross negligence in supervision of inferior officers).

In short, the scant allegations contained in the Amended Complaint evidence that all RIDOC Defendants are entitled to qualified immunity. Plaintiff Taylor fails to allege that any facts indicating that Plaintiff Taylor's constitutional rights were violated and that RIDOC Defendants acted with deliberate indifference. Therefore, RIDOC Defendants' Motion must be granted and all claims against RIDOC Defendants must be dismissed.

## C. THE AMENDED COMPLAINT MUST BE DISMISSED PURSUANT TO FED. R. 12(B)(6), AS THE MAJORITY OF THE AMENDED COMPLAINT CONSISTS OF VAGUE LEGAL CONCLUSIONS AND UNRECOGNIZED CAUSES OF ACTION.

Although is difficult to understand exactly what causes of action Plaintiff attempts to allege against RIDOC, the Amended Complaint mentions violations of Rhode Island law[10] and the United States Constitutions several times. *See* ECF 8 at ¶¶ 23-26, 32. The Amended Complaint makes several cursory references to several federal and state causes of action, such as constitutional conspiracy under 42 U.S.C. § 1985, *see* ECF 8 at ¶ 1, as well as "negligence," ECF 8 at ¶¶ 29, 31 under Rhode Island law. Plaintiff fails, however, to plead facts beyond vague legal conclusions, such as for example: "Leiutenant [*sic*] Amaral is liable for negligence, he had been informed of Defendant Barber's actions." ECF 8 at ¶ 27. The allegations contained in the Amended Complaint fall far short of the standard to state a viable claim under Rule 8(a) and the pleading standard.

To survive a motion to dismiss, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A viable complaint must also satisfy Fed. R. Civ. P. 8(a), which requires a plaintiff to include "a short and plain statement of the grounds for the court's jurisdiction . . . and of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In screening Plaintiff's first Complaint, the Court noted that:

> Plaintiff's complaint does not comply with the requirements either of Rule 8(a) or of Rule 10(b) in that his statement of the claim is four pages of tightly-packed handwritten stream of consciousness, without breaks for sentences or paragraphing and with no margins. The result is largely unreadable and what is readable is very difficult to comprehend. In performing its duty to screen, the Court has attempted several times to read Plaintiff's filing but has found it impossible to ascertain which defendants are being accused of

---

[10] Plaintiff's only reference to Rhode Island law appears in paragraph 32 of the Amended Complaint. However, try as they might, RIDOC Defendants are at a loss in trying to discern the meaning of paragraph 32, which alleges: "All Defendants are liable for depriving Plaintiff of right [sic] under the general laws which are fictitious laws that mean [*sic*] solely for corporations." ECF 8 at ¶ 32.

which actions or inactions. Because of these deficiencies, in its current state, the complaint fails to set forth the "who, what, when, where and why" information that are essential for a plausible claim.

Report and Recommendation, ECF 7 at 3 (quoting *Kilby v. Johnson & Wales Univ.*, No. CA 14-217 ML, 2014 WL 2196942, at *2 (D.R.I. May 27, 2014)). While Plaintiff's Amended Complaint is at least legible and includes numbered paragraphs and punctuation, the Amended Complaint fails to comply with the Federal Rules of Civil Procedure[11] and fails to state a viable claim under the pleading standard.

### 1. Plaintiff fails to allege sufficient facts to support a claim for constitutional conspiracy pursuant to 42 U.S.C. § 1985.

Early on in the Amended Complaint Plaintiff alleges that "[t]his is a civil action authorized by 42 U.S.C. § 1985…" purporting to bring a constitutional conspiracy claim. *See* ECF 8 at ¶ 1. Section 1985 has three subsections which proscribe five types of conspiracies. Plaintiff fails to specify which RIDOC Defendants allegedly violated Section 1985 and which provision of Section

---

[11] Plaintiff's Amended Complaint appears to have corrected the deficiencies of the original complaint with respect to Rule 10(b); however, the Amended Complaint fails to comply with Rule 10(a) because it fails to name *all* parties in the caption. Rule 10(a) allows the caption of pleadings, other than the complaint, to refer generally to other parties after naming the first party on each side. Fed. R. Civ. P. 10(a). Furthermore, a plaintiff must name all parties in an amended complaint as well because "[a]n amended complaint, once filed, normally supersedes the antecedent complaint. Thereafter, the earlier complaint is a dead letter and no longer performs any function in the case." *See Newman v. Lehman Bros. Holdings Inc.*, 901 F.3d 19, 27 (1st Cir. 2018) (quoting *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008)). The caption of Plaintiff's Amended Complaint is titled "Taylor v. Duffy, et al" naming only the last name of Plaintiff and the last name of Defendant Duffy and using "et al" to refer generally to the other parties. Ordinarily a format-related violation of Rule 10(a) could be corrected through further subsequent amendment, *see* Fed. R. Civ. P. 15(a)(2); but, granting Plaintiff leave to file a second amended complaint would be an effort in futility even at this early stage, because Plaintiff has failed to exhaust all administrative remedies available, as discussed *supra*, and states no causes of action against any of the RIDOC Defendants or RIDOC itself. *See Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011) (quoting *ACA Fin Guar. Corp. v. Advest Inc.*, 512 F.3d 46, 56 (1st Cir. 2008)) ("Grounds for denial [of leave to amend] include 'undue delay, bad faith or dilatory motive … repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party … [and] *futility of amendment*.") (emphasis added). The district court's decision "will not be disturbed 'if any adequate reason for the denial is apparent on the record.'" *Barber v. Verizon New England, Inc.*, 2006 WL 561893 *1 (D.R.I. March 7, 2006) (quoting *Massachusetts Eye and Ear Infirmary v. OLT Phototherapeutics, Inc.*, 412 F.3d 215, 231 (1st Cir.2005)). An appellate court's review is with an "abuse of discretion" eye. *Villanueva*, 662 F.3d at 127.

1985 Defendants allegedly violated. It is clear, however, that Plaintiff's allegations are insufficient to make out a claim under any of the five classes of prohibited conspiracies.

As Plaintiff is not a State officer or a witness, juror, or party to another lawsuit, the first two subsections need not be addressed. *See* 42 U.S.C. § 1985(1)-(2); *see also generally Corrente v. State of R.I.*, Dep't of Corr., 759 F. Supp. 73, 83 (D.R.I. 1991) (explaining the subsections of Section 1985). With respect to the first part of Section 1985(3), the Supreme Court has required an allegation that the conspiracy be motivated by a "racial, or otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Corrente*, 759 F. Supp. at 83; *Martone Place, LLC v. City of Springfield*, No. 16-cv-30170-MAP, 2017 WL 5889222, at *4, *18–19, *19 n.19 (D. Mass. Nov. 29, 2017) (dismissing conspiracy claim because "the complaint is devoid of allegations of 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus'") (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)); *Zell v. Ricci*, 321 F. Supp. 3d 285, 298 (D.R.I. 2018).

No such allegation is contained in Plaintiff's Amended Complaint and Plaintiff simply has not alleged that RIDOC Defendants conspired to injure him. Because Plaintiff's allegations are insufficient to make out a claim under any of the five types of conspiracies prohibited by Section 1985, RIDOC Defendants' Motion to Dismiss must be granted.

**2. Plaintiff cannot pursue claims for damages against RIDOC for alleged constitutional violations.**

Plaintiff Taylor also alleges miscellaneous constitutional violations against RIDOC, demanding money damages "in the amount of $75,000 against each defendant, jointly and severally" as well as "punitive damages in the amount of $75,000 against each defendant, jointly and severally". ECF 8 at ¶¶ 37-38. Plaintiff 's claims against RIDOC for money damages fail at

the outset. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a suit against a state official in his or her official capacity is not a suit against the official, but rather a suit against the official's office); *Danny B. ex rel. Elliott v. Raimondo*, 784 F.3d 825, 834 (1st Cir. 2015) (recognizing a suit against an official-capacity state defendant "is the functional equivalent of a suit against the sovereign."). The Supreme Court has clearly expressed, at least in the context of a § 1983 claim against a state for damages, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983". *Id.* at 71. Thus, Plaintiff's claims for compensatory and punitive damages are barred as a matter of law and must be dismissed. *See id.*

### 3. Plaintiff fails to allege a discernable cause of action under Rhode Island law.

As to any claims alleged against RIDOC under Rhode Island law, the Amended Complaint fails entirely under Fed. R. Civ. P. 8(a) and the *Iqbal-Twombly* pleading standard, because Plaintiff Taylor alleges no discernable causes of action that state a plausible claim for relief. *See Ashcroft*, 556 U.S. at 678 (2009). Rather, the Amended Complaint appears a written list of miscellaneous examples that Plaintiff attempts to use to show a general dissatisfaction with prison life. The "Legal Claims" alleged in the Amended Complaint, ECF 8 at ¶¶ 22-32, are nothing more than "labels and conclusions". *See Twombly*, 550 U.S. at 555. Plaintiff Taylor's cursory references that certain RIDOC Defendants are "liable for negligence", ECF 8 at ¶¶ 29, 31, and "assault", ECF 8 at ¶¶ 23, 28, 29, are nothing more than conclusory legal assertions and need not be credited. *See*; *A.G. v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013). For example, Amended Complaint does not allege any facts necessary to bring a *prima facie* claim for negligence,[12] such as the existence of a legal

---

[12] Any negligence claim against RIDOC Defendants would ultimately fail, as discussed *supra*, because RIDOC Defendants are entitled to qualified immunity for state torts such as negligence. *See Ensey v. Culhane*, 727 A.2d 687, 691 (R.I. 1999) ("Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity.") (quoting *Harlow*, 457 U.S. at 818).

duty or damages beyond purely "emotional distress", ECF 8 at ¶¶ 24-25, which are not recoverable absent physical injury under Rhode Island law. *See Reilly v. United States*, 547 A.2d 894, 897 (R.I. 1988); *see generally Hudson v. City of Providence*, 830 A.2d 1105, 1106-07 (R.I. 2003).

In sum, Plaintiff's Amended Complaint does not contain sufficient factual allegations to state a plausible claim for relief and falls far short of the pleading standard. *See* Ashcroft, 556 U.S. at 678. RIDOC Defendants cannot be expected to "guess" what causes of action Plaintiff Taylor attempts to allege. *See* Fed. R. Civ. P. 8(a). Regardless, granting Plaintiff leave to amend would be futile because the miscellaneous complaints alleged against RIDOC Defendants can be addressed through RIDOC's formal grievance procedure, which Plaintiff has failed to exhaust, pursuant to 42 U.S.C. § 1977e(a). Therefore, RIDOC Defendants' Motion must be granted.

## D. PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED BECAUSE SUCH RELIEF IS BARRED BY LAW AND PLAINTIFF DOES NOT SATISFY THE REQUIREMENTS FOR FEDERAL PRELIMINARY AND/OR PERMEANT INJUNCTIVE RELIEF.

The Amended Complaint requests that the Court declare in general terms "that the actions and omissions described herein violate Plaintiff's rights under the Constitution of the United States," but does not specify the allegedly unconstitutional act or custom or the constitutional right allegedly violated. ECF 8 at ¶ 34. Plaintiff also requests two forms of injunctive relief. First, Plaintiff requests that the Court enter "[a] preliminary injunction ordering defendants Bastine, Barber, and Marvillie to cease their various forms of harrassment [*sic*]…." ECF 8 at ¶ 35. Despite this request for relief, Plaintiff has not moved for a preliminary injunction. *See* Fed. R. Civ. P. 65. Thus, RIDOC Defendants need not address this issue. Second, Plaintiff requests that the Court enter "[a] permanant [*sic*] injunction ordering defendants Coyne-Fague and Aceto to transfer Plaintiff to Virginia corrections…." ECF 8 at ¶ 36.

24

Claims for prospective injunctive relief or prospective declaratory relief designed to remedy ongoing violations of federal law are outside the scope of the Eleventh Amendment. *Ex parte Young*, 209 U.S. 123 (1908). Where a complaint requests prospective injunctive relief, the plaintiff must allege an immediate threat of future injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1982) (holding that plaintiff lacked standing to bring claim seeking to enjoin the use of "chokeholds" by police officers because plaintiff did not establish a policy of using this technique and, thus, its future use was merely speculative). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff fails to identify the allegedly unconstitutional policy or practice and the constitutional right upon which it infringes. ECF 8 at ¶¶ 1, 34-36. The Supreme Court has said that if a plaintiff "has made no showing that he is realistically threatened by a repetition of his experience ..., then he has not met the requirements for seeking an injunction in a federal court, whether the injunction contemplates intrusive structural relief or the cessation of a discrete practice." *Reyes v. Supervisor of Drug Enf't Admin.*, 834 F.2d 1093, 1098 (1st Cir. 1987). Plaintiff has not alleged that he is being subjected to any continuing infringement of a liberty interest, or that he realistically expects a repetition of his previous experiences. In fact, all allegations contained in Plaintiff's Amended Complaint concern past acts by Defendants Bastine, Barber, and Marvillie. ECF 8 at ¶¶ 12-21.

Even if Plaintiff Taylor has somehow met the standards for injunctive relief, the requested relief—that the Court order Defendants Aceto and Coyne-Fague to transfer Plaintiff Taylor to Virginia Department of Corrections—is an inappropriate remedy to request of this Honorable Court as the classification and custody of an inmate are exclusively within the discretion of the

director of RIDOC. *See* R.I. Gen. Laws § 42-56-10. The Rhode Island Supreme Court has dealt with a similar request and stated that "Inmate classification is a confidential administrative matter squarely within the DOC director's exclusive discretion. As such, prison inmates 'cannot under the guise of post-conviction relief … transpose the Superior Court into an appellate prison-inmate classification board." <u>DeCiantis v. Rhode Island Dep't of Corr.</u>, 840 A.2d 1090, 1092 (R.I. 2003); *see also* R.I. Gen. Laws §§ 42-56-30 (establishing the RIDOC Inmate Classification Board); *Bishop v. State*, 667 A.2d 275, 277 (R.I. 1995) (holding that inmates have "no constitutional or statutory protected liberty interest in the present prison-inmate classification process used in this state."). Plaintiff makes no allegations that he petitioned the RIDOC Classification Board for reclassification or to be moved to a different facility. <u>See</u> R.I. Gen. Laws §§ 42-56-31 (empowering the Classification Board to recommend changes of an inmate's security classification to the Director). Additionally, such an order would not only usurp the powers assigned by the General Assembly to the director of RIDOC, but also place a substantial burden on the Virginia Department of Corrections, who is not a party to this action and therefore lacks notice of these claims. *See* 28 U.S.C. § 2202 ("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.").

In short, the Amended Complaint fails to meet the requirements for prospective injunctive relief in federal court and such relief would infringe on the powers of the director of RIDOC and place undue burden on the Virginia Department of Corrections. Therefore, the Court should dismiss Plaintiff's claims for injunctive relief.

## IV.    <u>CONCLUSION</u>

RIDOC Defendants pray that this Honorable Court grant RIDOC Defendants' Motion and

dismiss Plaintiff's Amended Complaint with prejudice for the reasons set forth herein.

Respectfully Submitted,

RIDOC Defendants
by their attorney,

PETER F. NERONHA
ATTORNEY GENERAL

*/s/ Matthew I. Shaw*
*/s/ Justin J. Sullivan*
Matthew I. Shaw (#7325)
Special Assistant Attorney General
Justin J. Sullivan, Esq. (#9770)
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 S. Main St., Providence, RI 02903
Tel: (401) 274-4400 | Ext. 2226 / 2007
mshaw@riag.ri.gov
jjsullivan@riag.ri.gov

Dated: January 14, 2019

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on Monday, January 14, 2019 I filed the within document via the ECF filing system and that a copy is available for viewing and downloading. I further certify that on Monday, January 14, 2019  I mailed a true and accurate copy of the within document via U.S. First Class mail, postage prepaid, to the following:

*Plaintiff, pro se*
Lemuel O. Taylor (Inmate 157066)
P.O. Box 8200
Cranston, RI 02920

                                    */s/ Karen M. Ragosta*