# EXHIBIT A

## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF RHODE ISLAND

**LEMUEL O. TAYLOR,**
   *Plaintiff,*

  **v.**

**PATRICIA A. COYNE-FAGUE, alias, individually and in her official capacity as Director of the Rhode Island Department of Corrections, STATE OF RHODE ISLAND, by and through its treasurer, Seth Magaziner, JEFFREY ACETO, individually and in his official capacity as Warden at the Dept. of Corrections, WALTER DUFFY, alias, individually and in his official capacity as correctional officer at the Dept. of Corrections, STEVEN CALISE, alias, individually, CO NUNO FIGUEIREDO, individually, CO "BASTIEN", individually, CO "BARBER", individually, CO "MARVILLIE", individually, CO "CRAIG", individually, and JOHN DOES 1-5 alias, individually and in their official capacity as correctional officers at the Dept. of Corrections,**
   *Defendants.*

        **C.A. No.: 18-436**

## PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND

### *Preliminary Statement*

1. This is a civil action brought by the Plaintiff seeking compensatory and punitive damages as well as counsel fees and costs for acts and omissions of Defendants in violation of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983, and Article 1, §§ 2 and 8 of the Rhode Island Constitution, directly actionable in accordance with *Jones v. State of Rhode Island*, 724 F. Supp. 25 (D.R.I. 1989). Additionally, Plaintiff is seeking relief for the same acts and omissions of Defendants amounting to negligence and for acts and omissions of Defendants Walter Duffy, Jeffrey Aceto, Steven

Calise, Nuno Figueiredo, "Barber", "Marvillie", "Craig", "Bastien", and John Does 1 through 5 amounting to negligence, gross negligence, assault, and battery, actionable under Rhode Island General Laws § 9-31-1, and excessive force, actionable under R.I. General Laws § 12-7-8.

## JURISDICTION AND VENUE

2.  This Court has original subject matter jurisdiction over the claims in this complaint that allege violations of 42 U.S.C. § 1983 (civil rights claims) pursuant to 28 U.S.C. § 1331.

3.  This Court has supplemental jurisdiction over the claims within this complaint that arise under state law, pursuant to 28 U.S.C. § 1367.

4.  Venue is proper in this Court because, on information and belief, the Defendants reside or may be found in the District of Rhode Island in compliance with the requirements set forth in 28 U.S.C. §1391.  Venue is also proper because a substantial part of the events or omissions giving rise to the claims occurred in the District of Rhode Island.

### *Jury Trial Demanded*

5.  Plaintiff demands a trial by jury on all counts so triable.

## PARTIES

6.  At all times relevant, Plaintiff was a resident of the State of Rhode Island.

7.  Defendant Patricia A. Coyne-Fague ("Coyne-Fague"), alias, is a citizen and resident of the State of Rhode Island and of the United States.  Coyne-Fague is sued herein individually and in her official capacity and, at all relevant times pertinent hereto, was the Acting Director of the Rhode Island Department of Corrections ("DOC"). Coyne-Fague had actual or constructive knowledge of violations of Plaintiff's constitutional rights and knew or had constructive notice of the practices that led to them. She did not act to stop or curb them.  She created, maintained,

or implemented policies or customs acquiescing to, allowing, encouraging, or ratifying these unlawful acts.

8. Defendant Warden Jeffrey Aceto ("Defendant Aceto"; "Warden Aceto") is liable on bases similar to Defendant Coyne-Fague given the responsibilities and supervisory authority inherent in his position as Warden of the Maximum Security Facility and the acts or omissions described herein. Warden Aceto is sued individually and in his official capacity as Warden.

9. Defendant State of Rhode Island is sued on the basis of official acts and omissions committed by employees and agents of the DOC, a department established to provide for the custody, care, discipline, training, treatment, and study of persons committed to state correctional institutions pursuant to R.I. Gen. Laws § 42-56-1 *et. seq.* At all relevant times hereto, DOC employed the named individual defendants either as employees or contract agents. Defendant State is subject to the jurisdiction of this Court in accordance with the State of Rhode Island's express waiver of sovereign immunity pursuant to R.I. Gen. Laws §9-31-1 and other applicable law. *Marrapese v. State*, 500 F.Supp. 1207, 1221-23 (D.R.I. 1980).

10. Correctional Officer ("CO") Defendants Walter Duffy, Steven Calise, Nuno Figueiredo, "Bastien", "Barber", "Marvillie", "Craig", and John Does 1 through 5, whose acts or omissions were responsible for or caused or contributed to the harm and damages sustained by Plaintiff as alleged herein, are sued individually and in their official capacity, and were at all times relevant herein duly appointed and acting officers, servants, employees, and agents of the Rhode Island Department of Corrections, an agency of the State of Rhode Island. At all times relevant herein, the individual defendants were acting under color of laws, statutes, ordinances, regulations, policies, customs, and/or usages of the State of Rhode Island and RI DOC, in the course and scope of their duties and functions as officers, agents, servants, and employees of

the RI DOC, were acting for, on behalf of, and with the power and authority vested in them by, the State of Rhode Island and the RI DOC, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

11. Unless otherwise specified, the term "Defendants" as hereinafter used shall refer collectively to each and every Defendant named or described in the instant action.

12. The term "correctional officer" or "CO" is used broadly to include all officer ranks and members of the Special Investigations Unit.

13. Unless otherwise specified, the term "individual Defendants" as hereinafter used shall refer collectively to each and every Defendant named or described in the instant action except the Defendant State.

14. The true names of Defendants denoted by "[LAST NAME]" or "Doe" are unknown to Plaintiff who therefore sues said Defendants by such fictitious or approximate names. Plaintiff further alleges that each of the said Defendants are also responsible for the acts and occurrences hereinafter set forth. Plaintiff will amend this Complaint to show their true names and capacities when the same are ascertained, as well as the manner in which each fictitious Defendant is responsible for the damages sustained by Plaintiff.

## **FACTS**

15. At all times relevant, Plaintiff Lemuel O. Taylor was a Virginia inmate serving time in Rhode Island under the interstate compact (ICAOS). Unless stated otherwise, all events giving rise to Plaintiff's Second Amended Complaint transpired in the RI DOC facilities.

*Disclosure of Cooperation with Law Enforcement*

16. It is common knowledge that providing evidence to law enforcement—"snitching"—is dangerous business, particularly within certain communities. In the prison context, for instance, to be labeled as a "snitch" puts one at especially high risk of serious bodily injury.

17. Plaintiff Taylor was transferred to Rhode Island DOC custody in August of 2017.

18. In September of 2017, while at the Intake Service Center, Defendant Correctional Officer "Craig" ("CO Craig"; "Defendant Craig") made numerous verbal remarks that put Plaintiff in reasonable fear for his wellbeing, including outright stating "I don't like you; I don't like Virginia inmates."

19. On September 17, 2017, Defendant Craig announced to the attention of a large group of inmates with gang affiliations known to DOC that Plaintiff was an "out-of-state snitch," implying that Plaintiff had a history of cooperation with law enforcement, and further, that Plaintiff was already "working with" investigators from RI DOC Special Investigations Unit (SIU).

20. Defendant Craig's malicious or reckless disclosure caused Plaintiff to be assaulted and beaten by at least two (2) inmates later that same day.

21. Later that week Plaintiff was transferred to the Maximum Security facility where Defendant CO Walter Duffy propositioned Plaintiff to become his "snitch."

22. Plaintiff unambiguously refused Defendant Duffy's entreaty, which drew Defendant's ire. Duffy boasted to Plaintiff that he "could make things very hard" for Mr. Taylor at Maximum Security, and then commenced a campaign of retaliatory harassment and assault consisting of repeatedly using and tolerating racist nicknames for Plaintiff over Plaintiff's repeated

objections, repeatedly and baselessly ordering Plaintiff's person and cell searched for nonexistent weapons, causing the attendant sullying and destruction of Plaintiff's property, legal paperwork, mail, pictures of family members, clothing, and other valuable and meaningful items within Plaintiff's lawful possession, along with other threats of further harm.

23. When Plaintiff complained or "grieved" relative to Defendant Duffy's conduct, Duffy would see that Plaintiff was sent to solitary confinement or the Disciplinary Confinement Unit ("DCU"; "segregation") as it is sometimes called euphemistically. This pattern obtained numerous times during Plaintiff's stay at Maximum Security in 2017-2018.

24. During one of his stints in DCU, Plaintiff was approached by Defendant SIU Investigator Nuno Figueiredo, who indicated to Plaintiff that he had the power to end the harassment and assault from the other officers and inmates if Plaintiff would just agree to be Defendant's "eyes and ears" in the cellblock, implying that he wanted Plaintiff to actively monitor and report to Defendant any observations of illegal activity of other inmates.

25. Plaintiff unambiguously declined Defendant Figueiredo's invitation.

26. In response to Plaintiff's declination, Defendant Figueiredo retaliated by using a pen to write his direct phone number in large font on the outside of Plaintiff's forearm, while Plaintiff's arms were shackled at the wrists, in such a size that the number would be visible to all as he shuffled through the facility back to his cell, literally *branding* Plaintiff as a "snitch."

27. The SIU phone number is well known within the local inmate population as the "snitch hotline."

28. Plaintiff was released from the DCU shortly thereafter, but Defendant Figueiredo demanded that Plaintiff contact him by that coming Friday.

29. Plaintiff never contacted Defendant Figueiredo, and the following Monday Plaintiff was locked back in DCU.

30. Defendant Warden Aceto visited Plaintiff in response to a complaint or grievance he filed over the incident with Defendant Figueiredo.

31. Rather than taking any corrective action at all, Defendant Aceto made things worse for Plaintiff. Defendant Aceto made a verbal statement to Plaintiff to the following effect: "I know who you are, and I don't like you. I don't like Virginia inmates. I don't know why they keep sending you all out here. All Virginia inmates are nothing but trouble."

32. Plaintiff is informed and believes that he correctly perceived Defendant Aceto's remark as a practical license for correctional officers to continue to mistreat and abuse him with impunity.

33. In January of 2018, while Plaintiff was in the "day room" area at Maximum Security along with many other inmates, Defendant CO "Barber" announced to the attention of the entire room, that Plaintiff was a "snitch," threatened to break Plaintiff's jaw, boasted that he could do so and get away with it, and graphically described other contemplated bodily harm and mutilation he would like to visit upon Plaintiff.

34. Plaintiff repudiated the odious allegation, which caused Defendant "Barber" to become enraged, enter Plaintiff's cell, and proceed to destroy articles of clothing and toiletries belonging to Plaintiff under the guise of a "search" for alleged contraband.

35. Plaintiff reported the incident to the Lieutenant on duty, but later that same night, Defendant Barber returned to Plaintiff's cell and continued to threaten and harass Plaintiff, causing Plaintiff great anxiety and fear for his safety.

36. In July of 2018, at the High Security Facility, Defendant CO Steven Calise permitted a particularly volatile inmate to access Plaintiff's legal paperwork, in violation of DOC policy. The inmate read the paperwork, called Plaintiff a "snitch," and made several open threats to Plaintiff's safety.

37. Plaintiff, in great fear, reported the threats and the conduct of Defendant Calise to the attention of several correctional officers and other DOC personnel, including SIU.

38. On information and belief, DOC took no corrective or disciplinary action whatsoever in response to Plaintiff's many complaints.

39. Plaintiff was assaulted and battered by this inmate a few weeks later in August 2018.

### *Suborning Racism and Hate Crime*

40. Plaintiff incorporates and realleges all paragraphs above and below as if fully set forth herein.

41. Defendants Duffy and John Does Correctional Officers 1-5 routinely referred to Plaintiff, who is of African-American decent, as "boy" despite Plaintiff's repeatedly objecting to the racist term.

42. During December 2017, while in solitary confinement at the Maximum Security facility, Defendant CO "Bastien" accosted Plaintiff and accused him of being a "snitch." When Plaintiff asked him to leave, Defendant Bastien drew Plaintiff's attention to a tattoo on Defendant's forearm depicting the image of a noose hanging from the branch of a tree. Defendant Bastien then explained that his tattoo meant "hang niggers".

43. Plaintiff reported the incident to CO Spears who confirmed to Plaintiff that Defendant Bastien does in fact have a tattoo on his forearm depicting a noose hanging from a tree, and instructed Plaintiff to file a grievance.

44. On information and belief, another CO confirmed to Plaintiff the existence of Bastien's noose tattoo and shared his perception that Defendant Bastien is known to be racist.

45. As advised, Plaintiff filed a grievance against Defendant Bastien alleging the facts as described above. However, the grievance was denied and dismissed as "unfounded" because the date of incident Plaintiff supplied on the grievance form was allegedly incorrect.

### Sexual Harassment and Battery

46. Plaintiff incorporates and realleges all paragraphs above and below as if fully set forth herein.

47. During April 2018, at the High Security Facility, Defendant CO "Marvillie" escorted Plaintiff to a dentist appointment.

48. While Plaintiff was seated in the examination chair, Defendant complemented Plaintiff's muscular definition and proceeded to squeeze and caress Plaintiff's biceps.

49. Plaintiff verbally objected, but Defendant continued to make lascivious statements to Plaintiff and molest his person.

50. Plaintiff reported the incident and was informed that DOC has received other complaints of similar conduct on the part of this Defendant CO.

### Acting Director of the DOC

51. Plaintiff incorporates and realleges all paragraphs above and below as if fully set forth herein.

52. As Acting Director, Coyne-Fague is statutorily responsible for the overall management, administration, and supervision of the Rhode Island prison system pursuant to R.I. Gen. Laws § 42-56-10 *et. seq.*

53. Pursuant to R.I.G.L. §42-56-1, *et seq*., Defendant Coyne-Fague, in her capacity as Director of the DOC, is the chief policy-making official of the DOC and she is responsible for promulgating and implementing DOC rules and regulations.

54. Pursuant to R.I.G.L. §42-56-10, Defendant Coyne-Fague, in her capacity as Director of the DOC, is responsible for, *inter alia*, the hiring, training, supervision, and discipline of all employees of the DOC, including the individual Defendants, as well as for the overall management of the DOC.

55. On information and belief, Defendant Coyne-Fague delegates, in whole or in part, her foregoing described responsibilities under R.I.G.L. §42-56-1, *et seq*. to other employees and agents of the DOC, including the individual Defendants.

### *Official Policy and Conduct of Defendant Coyne-Fague*

56. The customs, practices, and policies complained of herein constitute an official policy or custom of the Defendant State that was promulgated, created, acquiesced to, permitted, condoned, encouraged, or ratified by the chief policy-making official of the DOC, Defendant Coyne-Fague.

57. Defendants failed to properly select, train, instruct, supervise and discipline employees and agents of the DOC, including the individual Defendants, relative to the proper maintenance of confidentiality with respect to inmate cooperation with law enforcement, review of inmate grievances regarding correctional officer misconduct, protecting inmates from unreasonable risks of harm, protecting inmates who cooperate with law enforcement, investigating sexual assault of inmates by correctional officers, and preventing racially-motivated hate crime by correctional officers.

58. The Defendant State is liable in tort under the doctrine of *respondeat superior* for the acts and omissions of its agents, including, but not limited to, the individual Defendants, committed within the scope of their employment, which proximately caused the harm of which Plaintiff complains.

### *Harm and Damages*

59. Plaintiff incorporates and realleges the preceding paragraphs as if fully set forth herein.

60. Defendants' acts and omissions as aforesaid violated clearly established constitutional or statutory rights of Plaintiff, of which Defendants knew or should have known.  Furthermore, at all times relevant, Defendants knew or should have known that their conduct would cause or contribute to the deprivation of Plaintiff's clearly established constitutional or statutory rights.

61. At all relevant times, Defendants acted intentionally, willfully, wantonly, maliciously, or with reckless or callous indifference or gross negligence amounting to deliberate indifference to Plaintiff's constitutional or statutorily protected rights.

62. The harm suffered by Plaintiff as a result of the acts and omissions of Defendants, including without limitation those described above, includes, on information and belief, permanent anxiety and mental anguish.

63. As a result of the acts and omissions of Defendants, including without limitation, those set forth above, Plaintiff sustained personal injuries and has endured and will continue to endure great pain and suffering, incur expenses for medical care and treatment, and suffer other great damage.

## CLAIMS TO RELIEF

## COUNT ONE

### *Violation of the Right to Equal Protection, Actionable under 42 U.S.C. §1983*

64. Plaintiff incorporates and realleges all paragraphs above and below as if fully set forth herein.

65. Defendants, acting under the color of state law, by their individual or concerted acts and omissions, including but not limited to those described herein, have deprived the Plaintiff of his rights to equal protection, causing the Plaintiff to suffer harm as aforesaid, and have thereby deprived the Plaintiff of rights secured under the Fourteenth Amendment to the United States Constitution, actionable pursuant to 42 U.S.C. §1983.

## COUNT TWO

### *Violation of the Right to Equal Protection under Article 1, §2 of the Rhode Island Constitution*

66. Plaintiff incorporates and realleges all paragraphs above and below as if fully set forth herein.

67. Defendants, acting under the color of state law, by their individual or concerted acts and omissions, including but not limited to those described herein, have deprived the Plaintiff of his rights to equal protection, causing the Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under Article 1, §2 of the Rhode Island Constitution.

## COUNT THREE

### *Violation of the Right to Be Free from Unreasonable Searches and Seizures under the Fourth Amendment of the United States Constitution*

68. Plaintiff incorporates and realleges all paragraphs above and below as if fully set forth herein.

69. Defendants, acting under the color of state law, by their individual or concerted acts and omissions, including without limitation those described herein, have deprived Plaintiff of his

right to be free from unreasonable searches and seizures, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under the Fourth Amendment to the United States Constitution, actionable pursuant to 42 U.S.C. §1983.

## COUNT FOUR

### *Battery (State Tort Claim)*

70. Plaintiff incorporates and realleges all paragraphs above and below as if fully set forth herein.

71. Defendants Figueiredo and "Marvillie", by their individual or collective acts, including but not limited to those alleged herein, intentionally touched Plaintiff with the intent to harm or offend Plaintiff, without his consent, or with involuntary consent obtained by coercion, thereby proximately causing the Plaintiff to sustain damages as alleged herein, actionable under R.I. Gen. Laws. § 9-31-1.

## COUNT FIVE

### *Violation of the Right of Freedom from Cruel and Unusual Punishment under 42 U.S.C. §1983*

72. Plaintiff incorporates and realleges all paragraphs above and below as if fully set forth herein.

73. Defendants, acting under the color of state law, by their individual and/or concerted acts or omissions, including but not limited to those described herein, have deprived the Plaintiff of his right to be free from cruel and unusual punishment, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived the Plaintiff of rights secured under the Eight and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983.

## COUNT SIX

### *Violation of the Right of Freedom from Cruel and Unusual Punishment under Article 1, §8 of the Rhode Island Constitution*

74. Plaintiff incorporates and realleges all paragraphs above and below as if fully set forth herein.

75. Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have deprived Plaintiff of his right to be free from cruel and unusual punishment, causing the Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under Article 1, §8 of the Rhode Island Constitution.

## COUNT SEVEN

### *Intentional Infliction of Emotional Distress (State Tort Claim)*

76. Plaintiff incorporates and realleges all paragraphs above and below as if fully set forth herein.

77. Defendants, along with several "John Doe" CO Defendants, by their individual or collective acts, including but not limited to those alleged herein, intentionally or recklessly engaged in outrageous conduct against Plaintiff with the intent to cause Plaintiff severe emotional distress, or with deliberate disregard with a high degree of probability that emotional distress would follow, thereby proximately causing Plaintiff to sustain damages as alleged herein, actionable under R.I. Gen. Laws. § 9-31-1 and *Jalowy v. Friendly Home*, 818 A.2d 698, 707 (R.I. 2003); *DiBattista v. State*, 808 A.2d 1081, 1088 (R.I. 2002); *Clift v. Narragansett TV L.P.*, 688 A.2d 805, 812 n.5 (R.I. 1996).

## COUNT EIGHT

### *Excessive Force (State Tort Claim)*

78. Plaintiff incorporates and realleges all paragraphs above and below as if fully set forth herein.

79. Defendants, by their individual or collective acts, including but not limited to those alleged herein, intentionally or recklessly used greater force than necessary to detain Plaintiff, and used unreasonable or unnecessary force in making an arrest, thereby proximately causing the Plaintiff to sustain damages as alleged herein, actionable under R.I. Gen. Laws. § 12-7-8.

### *Prayer for Relief*

**WHEREFORE**, the Plaintiff prays that this Court grant the following relief:

80. A declaratory judgment declaring that the Defendants, in the manner described herein, subjected the Plaintiff to violations of his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and Article 1, §§2 and 8 of the Rhode Island Constitution;

81. For an order directing the Defendants to set forth constitutionally-permissible policies and procedures with respect to the protocol and procedure for protecting confidentiality of inmate cooperation with law enforcement, protecting inmates from unreasonable risks of serious harm, handling inmate complaints of officer misconduct, and preventing racist hate crimes by correctional officers;

82. An award of compensatory damages;

83. An award of punitive damages;

84. An award of any other damages or relief available under applicable law;

85. An award of reasonable attorney's fees and costs of litigation to Plaintiff pursuant to 42 U.S.C.

§1983; and/or other applicable law; and,

86. Such other and further relief as this Court deems just and proper.

***Designation of Trial Counsel***

87. Plaintiff hereby designates Jesse W. Duarte, Esquire, as trial counsel.

Respectfully Submitted,
LEMUEL O. TAYLOR
By his attorney:

Dated: December 11, 2019

/s/ ***Jesse W. Duarte, Esq.***
Jesse W. Duarte, Esq., #8978
DUARTE LAW FIRM, LLC
55 Pine Street
Providence, RI 02903
P: 401.323.7240
F: 401.256.5173
Jwd@401notguilty.com

## CERTIFICATE OF SERVICE

I hereby certify that I caused the within document to be filed through the ECF system on

December 11, 2019, and that notice will be sent electronically to all counsel who are registered

participants identified on the mailing information for C.A. No. 18-436.

/s/ ***Jesse W. Duarte***

[VERIFICATION FORTHCOMING]