## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

**LEMUEL O. TAYLOR**, *pro se*,
        *Plaintiff*

v.                                                              C.A.: 1:18-cv-00436-MSM-PAS

**WALTER DUFFY; *et al.*,**
        *Defendants*

### MEMORANDUM OF LAW IN OPPOSITION TO
### PLAINTIFF'S MOTION FOR LEAVE TO AMEND

#### *Introduction*

Defendants file this objection to Plaintiff, Lemuel Taylor's, (hereinafter, the "Plaintiff")

Motion to Amend Complaint (ECF 39) on grounds the proposed amendment, or portions thereof,

render the same futile.  Broadly, the Proposed Second Amended Complaint is over pled, asserting

a number of claims for which there are no factual allegations to support and naming a number of

parties for which there are no substantive allegations asserted.  Relative to those Defendants for

which facts have been alleged, the Proposed Second Amended Complaint fails to state a claim

upon which relief may be granted.  For the reasons stated herein, Defendants respectfully request

this Honorable Court deny Plaintiff's Motion.

#### *Standard of Review*

Leave to amend a complaint under Rule 15 of the Federal Rules of Civil Procedure freely

given when justice so requires absent an adequate basis to deny amendment such as futility, bad

faith, undue delay or a dilatory motive.  See Libby v. Park, Marion and Vernon Streets Operating

Company, LLC, 278 F.Supp.3d 501 (D. Mass. 2017).   A motion to amend a pleading may be

opposed on grounds of futility – i.e., that the proposed amendment fails to state a claim upon which

relief may be granted.  In evaluating the sufficiency of the allegations of a complaint in the context

of such a claim of futility, courts are guided by Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  Id.

In the context of a Rule 12(b)(6), our courts have interpreted this rule to require a pleading

to contain sufficient facts to show an entitlement to the requested relief. To survive a Rule 12(b)(6)

motion to dismiss, a plaintiff's "well-pleaded facts must possess enough heft to show that [they

are] entitled to relief." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008). In evaluating whether

a plaintiff's claims are entitled to relief, the court must accept as true all well-pleaded facts and

indulge all reasonable inferences in plaintiff's favor. Bell Atl. Corp. v. Twombly, 550 U.S. at 557.

The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint

fails to set forth factual allegations, either direct or inferential, respecting each material element

necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d

301, 305 (1st Cir. 2008).

In Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009), the Supreme Court reaffirmed Twombly

and clarified that two underlying principles must guide a court's assessment of the adequacy of

pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. Iqbal, 556

U.S. at 662. First, the court must identify any conclusory allegations in the complaint as such

allegations are not entitled to an assumption of truth. Id. at 677-79. Specifically, the court is not

compelled to accept legal conclusions set forth as factual allegations in the complaint. Id. Further,

"threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also Penalbert-Rosa v. Fortuno-Burset,

631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal

conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between

the conclusory to the factual."). In other words, "[a] plaintiff is not entitled 'to proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, only a complaint that states a plausible claim for relief can survive a motion to dismiss. Iqbal, 556 U.S. at 679.

In analyzing whether a complaint meets the plausibility requirements set out by Twombly and Iqbal, the court must employ a two-step approach. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, the court must identify and disregard statements in the complaint that offer "legal conclusion[s] couched as...fact[]" or that "merely parrot the elements of the cause of action." Id. Second, the court must treat as true the non-conclusory factual allegations in the complaint, even if seemingly unrealistic. Id. (citing Iqbal, 556 U.S. at 681). "In short, an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Id.

### *Argument*

Plaintiff's Proposed Second Amended Complaint appears to be a repackaging of the prior amended complaint for which Defendants had previously moved to dismiss.[1]   The proposed amendment asserts a number of allegations, vaguely lodged, against a number of individual employees of the Department of Corrections.  The allegations, cobbled together, fail to state a claim upon which relief may be granted.  In sum, the allegations fail to assert facts sufficient to identify a constitutional right or federal law at issue or any conduct on the part of the named defendants that deprive Plaintiff of any right or violate any federal law.  Plaintiff's proposed claims are further barred by the Doctrine of Qualified Immunity.  For the reasons stated herein, Plaintiff Motion to Amend (ECF 39) should be denied.

---

[1] Since the initial Complaint was filed (ECF 1), Plaintiff was transferred from the Adult Corrections Institute to an out of state facility and is no longer in the custody of the State of Rhode Island.

1. **Plaintiff's Proposed Second Amended Complaint is over pled and includes a number of counts for which there is no factual support.**

Broadly construed, and without conceding the facts alleged therein, Plaintiff's Proposed Second Amended Complaint appears to be an attempt to allege deliberate indifference on the part of several employees at the Rhode Island Department of Corrections.  See generally, ECF 39-1, Proposed Second Amended Complaint.  The Proposed Amended Complaint documents Plaintiff's travel throughout various facilities at the Adult Correctional Facilities (hereinafter, the "ACI") and encounters with various individuals whom he alleges engaged in conduct that served to deprive him of rights protected under the United States and Rhode Island Constitutions, as well as serving as the bases for various state law tort claims.  The allegations however, broadly construed, appear to be an attempt to allege deliberate indifference and violation of rights protected by the Eighth Amendment – and nothing more.  As articulated below, even allegations in support of Plaintiff's Eighth Amendment claim are threadbare.

a. *The Proposed Second Amended Complaint fails to state an equal protection claim.*

The Proposed Second Amended Complaint fails to allege facts sufficient to support an equal protection claim under either the Rhode Island or United States constitutions.  It is imperative that an equal protection claim outline facts sufficient to convey specific instances of unlawful discrimination.  See De La Cruz v. Irizarry, 946 F.Supp.2d 244 (D.P.R. 2013). The Equal Protection Clause requires that "all persons similarly situated ... be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); see Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004). Accordingly, to establish a plausible equal protection claim, a plaintiff not relying on typically impermissible bases for classification (e.g., race, religion, etc.) must show that it was "intentionally treated differently from others similarly situated, that no rational basis exist[ed] for

that difference in treatment, and that the different treatment was based on a malicious or bad faith intent to injure." Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006); see Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 10 (1st Cir. 2013). In other words, a viable equal protection claim must allege that compared with others similarly situated, plaintiff was selectively treated based on impermissible considerations based on race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith to intent to injure a person. De La Cruz, 946 F.Supp.2d at 244.

The Proposed Second Amended Complaint, and the facts asserted therein, makes no such allegation that Plaintiff was selectively treated based upon impermissible considerations based on one of the enumerated protective classes. As such, the Proposed Second Amended Complaint fails to allege *prima facie* claim under the equal protection clause.

b.  *The Proposed Second Amended Complaint fails to state a claim for deprivation of rights protected under the Fourth Amendment.*

The Proposed Amended Complaint fails to allege facts sufficient to support a claim for deprivation of rights protected under the Fourth Amendment.  An inmate's Fourth Amendment rights are not violated by searches and seizures that are "reasonable." See Bell v. Wolfish, 441 U.S. 520 (1979).  In determining the extent to which a given search is reasonable, courts are to consider the scope, manner, justification and place of the intrusion. Id.

Plaintiff's assertion that he has been deprived of his right to be free from unreasonable search and seizure appears to stem from, but is not specifically associated with, the allegations that his cell was searched, and property destroyed.  The Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. See Hudson v. Palmer, 468 U.S. 517, 525 – 26 (1984).  The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives

of penal institutions.  Id.  Moreover, Plaintiff has an adequate administrative remedy for these so-called allegations – he may file grievances; it is not apparent from the allegations in the Proposed Second Amended Complaint that Plaintiff exhausted his administrative remedies.

> c.  *Claims based on verbal threats are insufficient to support a claim upon which relief may be granted.*

To the extent Plaintiff's claims as articulated in the Proposed Second Amended Complaint are based on threats, slurs and the like, those allegations, even accepted as true, fail to state a claim upon which relief may be granted.  The weight of authority is that verbal threats, even abusive threats with racial epithets, do not, in the context of prison, violate an inmate's constitutional rights. "Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983." See Shabazz v. Cole, 69 F.Supp.2d 177, 200 – 01 (D.Mass. 1999), citing Jermosen v. Coughlin, 878 F.Supp. 444, 449 (N.D.N.Y.1995); accord Arce v. Banks, 913 F.Supp. 307, 309 (S.D.N.Y.1996) ( "yelling, cursing, or even race-baiting does not violate any constitutionally protected rights" of the plaintiff/inmate).

2. **Plaintiff's Proposed Second Amended Complaint fails to state a claim upon which relief may be granted against a number of named defendants therein.**

Notwithstanding the general failure of the Proposed Second Amended Complaint to allege facts to support the numerous claims therein, as applied to the named Defendants, the Proposed Second Amended Complaint is equally futile.

a. *Patricia Coyne-Fague*

A claim under Section 1983 may only be brought against officials in their individual capacity.  Even then however, a plaintiff must state a claim for direct liability rather than vicarious liability, as the *respondeat superior* theory is not a viable theory.  See Perez Olivo v. Gonzalez, 384 F.Supp.2d 536 (D.P.R. 2005).  Though supervisors may be held liable for failure to carry out

6

supervisor responsibilities, supervisory liability exists only where: there is subordinate liability; and the supervisor's action or inaction was "affirmatively linked" to the constitutional violation caused by the subordinate.  Id.  The supervisor's involvement in the allegations made by the plaintiff must rise to the level of reckless or deliberate indifference to the rights of plaintiff protected under the United States Constitution.  Id.; relying on Gutierrez-Rodriguez v. Cartagena, 882 F.2d 13 (1st Cir. 1989).

As pled, there are simply no allegations in the Proposed Second Amended Complaint that Director Coyne-Fague engaged in conduct that was reckless or indifferent to the rights of the plaintiff protected under the United States Constitution.  Rather, broadly speaking, the Proposed Second Amended Complaint merely alleges: Defendant Coyne-Fague, as director of the Department of Corrections, is statutorily responsible for the overall management of the prison system; that she is the chief policy making official of the Department of Corrections; and that she is the responsible for the hiring, training and supervision of employees.  Substantively, the Proposed Amended Complaint alleges, in conclusory terms, that the customs, practices, and policies complained of are official policies of the State and were condoned by Defendant Coyne-Fague.  See ECF39-1, Proposed Second Amended Complaint at ¶ 56.  There is simply no indication as to what customs, practice and polices Plaintiff complains of, as none are specifically identified, and there is simply no causal connection alleged that would link Defendant Coyne-Fague to any alleged conduct that deprived Plaintiff of rights protected under the Constitution.

Plaintiff further alleges Defendant Coyne-Fague failed to properly select, train, instruct, supervise and discipline employees and agents of the RIDOC, relative to confidentiality in cooperation with law enforcement, review of grievances, investigation od sexual assault and prevention of racially motivated hate crimes. See ECF39-1, Proposed Second Amended Complaint

7

at ¶ 57. Again, the allegation is pled in very general terms; there are simply no facts pled that serve to assert a causal connection.

The allegations alone are insufficient to articulate a claim for deprivation of rights protected by the Constitution and brought under Section 1983; rather, Plaintiff must at least allege individual involvement or strong causal connection or affirmative link between the behavior of a subordinate and the action or inaction of the supervisor. See Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011); Penate v. Hanchett, No. 19-1187 (1st Cir. December 13, 2019). Supervisory liability under section 1983 "cannot be predicated on *a respondeat theory*, but only on the basis of the supervisor's own acts or omissions." Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir.1997) (citations and internal punctuation omitted). "There is supervisory liability only if (1) there is subordinate liability, and (2) the supervisor's action or inaction was 'affirmatively linked' to the constitutional violation caused by the subordinate." Aponte Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir.1998). The affirmative link must constitute "supervisory encouragement, condonation or acquiescence, or gross negligence amounting to deliberate indifference." Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 902 (1st Cir.1988).

  b. *Defendant Aceto*

The Proposed Second Amended Complaint fails to state a claim upon which relief may be granted as against Defendant Aceto and therefore, fails for futility. As with Defendant Coyne-Fague, Plaintiff bases liability of Defendant Aceto, in part, on his role as supervisor. See ECF39-1, Proposed Second Amended Complaint at ¶ 8. Substantively however, and as discussed above, there are no allegations asserting individual involvement or strong causal connection or affirmative link between the behavior of a subordinate and the action or inaction of the supervisor. Rather, the only substantive allegations as against Defendant Aceto are: a visit to the Plaintiff regarding a

grievance, id. at ¶ 30; a verbal statement, id. at ¶ 31; and an allegation that remarks made directly to Plaintiff by Aceto somehow served as license for mistreatment of Plaintiff by correctional officers. Id. at ¶ 32.

Plaintiff's allegations of a mere conversation he had with Defendant Aceto are insufficient to state a claim upon which relief may be granted under any theory. Relative to Defendant Aceto, Plaintiff alleges no protected right at stake and no conduct on the part of Defendant Aceto that would amount to deprivation of any right protected under the Constitution.

c. *Defendant Craig*

The Proposed Second Amended Complaint fails to state a claim upon which relief may be granted as against Defendant Craig and therefore, fails for futility. The allegations against Defendant Craig reflect Plaintiff tenure at the Intake Services Center ("ISC") and are limited simply to "numerous verbal remarks." See ECF 39-1, Proposed Second Amended Complaint at ¶¶ 18 – 19. Verbal harassment does not give rise to Section 1983 liability. See Collins v. Graham, 377 F.Supp.2d 241, 243 – 44 (D. Maine 2005) (Relying on Shabazz v. Pico, 994 F.Supp. 460, 474 (S.D.N.Y. 1998) (verbal harassment or profanity alone, unaccompanied by injury no matter how inappropriate, unprofessional, or reprehensible, does not constitute a violation of any federally protected right and is not actionable under Section 1983)).

d. *Defendant Duffy*

The Proposed Second Amended Complaint fails to state a claim upon which relief may be granted as against Defendant Duffy and therefore, fails for futility. The allegations asserted against Defendant Duffy in the Proposed Second Amended Complaint amount to as follows: that Duffy engaged in nondescript and vague "retaliatory harassment and assault consisting of repeatedly using and tolerating racist nicknames for Plaintiff;" engaging in "baseless" cell searches;

9

destruction of Plaintiff's property; and sending Plaintiff to the "Disciplinary Confinement Unit."

See ECF 39-1, Proposed Second Amended Complaint at ¶ 22.

Plaintiff's description of the conduct for which Duffy engaged does not meet the Iqbal and

Twombly standards, in that it fails to describe the conduct with any degree of specificity and is

insufficient to place Defendant on notice as to the claims against.  A complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"

Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. 544, 570 (2007) (emphasis added).

The pleadings need not contain "detailed factual allegations" but must provide "more than labels

and conclusions, and a formulaic recitation of the elements of the cause of action will not do."

Twombly, 550 U.S. at 555.  The allegations asserted against Defendant Duffy are conclusory and

lack description and specificity.  Plaintiff merely asserts these allegations using buzz words and

labels.  Indeed, the allegation of "retaliatory harassment" is made without any detail as to what,

when or how often.  Similarly, the allegation of "baseless cell searches" likewise offers no detail

and is limited to the labels in which it is pled.

   e. *Defendant Figueiredo*

The Proposed Second Amended Complaint fails to state a claim upon which relief may be

granted as against Defendant Figueiredo and therefore, fails for futility.  The allegations asserted

against Defendant Figueiredo in the Proposed Second Amended Complaint amount to as follows:

an act of retaliation in using a pen to write he direct number (SIU) on Plaintiff's arm; a demand

that Plaintiff contact him; the failure of Plaintiff to do so and the placement of Plaintiff in DCU.

See ECF 39-1, Proposed Second Amended Complaint at ¶¶ 24 – 29.  The allegations so asserted

do not give rise to a federal cause of action.  First, the allegation of "writing" on a person, accepting

as true, is *de minimis* at best and insufficient to support an Eighth Amendment claim.  See Wilkins

v. Gaddy, 59 U.S. 34 (2010).   The result of the above renders the claims against Defendant

Figueiredo futile.

### f.   Defendant Barber

The Proposed Second Amended Complaint fails to state a claim upon which relief may be

granted as against Defendant Barber and therefore, fails for futility. The allegations asserted

against Defendant Barber in the Proposed Second Amended Complaint amount to as follows: that

it was announced to a number of inmates that Plaintiff was a "snitch;" that Defendant Barber made

threats of physical violence; that Defendant Barber entered Plaintiff's cell and destroyed property;

and that Defendant Barber harassed and threatened Plaintiff.   See ECF 39-1, Proposed Second

Amended Complaint at ¶¶ 33 – 35.   Verbal harassment does not give rise to Section 1983 liability.

See Collins, 377 F.Supp.2d 241, 243 – 44 (D. Maine 2005); relying on Shabazz, 994 F.Supp. 460,

474 (S.D.N.Y. 1998).   The mere reporting of an incident is insufficient to satisfy the exhaustion

requirements of the PLRA.   Indeed, Section 1997e(a) clearly contemplates that exhaustion prior

to the commencement of the action as an indispensable requirement. Medina-Claudio v.

Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002) (collecting cases).   Here, there is no allegation

as to whether Plaintiff availed himself of the grievance process, when he did so, the status of any

grievance or the outcome.   Given the requirement that all remedies must be exhausted prior to

filing a complaint, the failure to do so – or even allege the same has occurred – renders Plaintiff's

claims against Defendant Barber futile.

### g.   Defendant Calise

The Proposed Second Amended Complaint fails to state a claim upon which relief may be

granted as against Defendant Calise and therefore, fails for futility.   The allegations asserted

against Defendant Calise in the Proposed Second Amended Complaint amount to as follows: that

Calise permitted a "particularly volatile" inmate access to Plaintiff's legal paperwork in violation of DOC policy (which is uncited or named); that the conduct was "reported" to several officers and personnel; and that several weeks later Plaintiff was assaulted by the inmate. See ECF 39-1, Proposed Second Amended Complaint at ¶¶ 36 – 39. The allegations fail to articulate a right protected by federal law or any conduct on the part of Defendant Calise that would amount to deprivation of a right protected or violation of federal law.

> h. *Defendant Bastien*

The Proposed Second Amended Complaint fails to state a claim upon which relief may be granted as against Defendant Bastien and therefore, fails for futility. The allegations asserted against Defendant Bastien in the Proposed Second Amended Complaint amount to as follows: that Defendant Bastien accused Plaintiff of being a snitch; drew Plaintiff's attention to a tattoo depicting the image of a noose; and made racist comments. See ECF 39-1, Proposed Second Amended Complaint at ¶¶ 41 – 45. In response, Plaintiff alleges he filed a grievance, but it was denied and dismissed as unfounded because the date on the grievance was incorrect. Id. at ¶ 45. Plaintiff makes no allegation that he resubmitted the grievance with a correct date.

The allegations asserted against Defendant Bastien are insufficient to state a claim upon which relief may be granted and Plaintiff's Proposed Second Amended Complaint with respect to these claims fails for futility. Verbal harassment does not give rise to Section 1983 liability. See Collins, 377 F.Supp.2d 241, 243 – 44 (D. Maine 2005); relying on Shabazz, 994 F.Supp. 460, 474 (S.D.N.Y. 1998). Indeed, except in circumstances giving rise to unnecessary and wanton infliction of pain, verbal and sexual harassment does not give rise to liability under Section 1983 in the prison context. Id.; Whitley v. Albers, 475 U.S. 312, 319 (1986); Duran v. Duval, 1998 WL 765726 (D.Mass. 1998). The claims asserted against Defendant Bastien in the Proposed Second

12

Amended Complain can be described as nothing more than a verbal exchange, however unpleasant or reprehensible that exchange might have been.  Regardless, "it is settled that emotional damage by verbal harassment does not amount to infringement of a constitutional right, and thus is not actionable under Section 1983." Id. citing Duran, supra.  Accordingly, Plaintiff's Proposed Second Amended Complaint fails to state a claim upon which relief may be granted as against Defendant Bastien, and thus fails for futility.

> i.   *Defendant Marvillie*

The Proposed Second Amended Complaint fails to state a claim upon which relief may be granted as against Defendant Marvillie and therefore, fails for futility.  The allegations asserted against Defendant Marvillie in the Proposed Second Amended Complaint amount to as follows: that Defendant escorted Plaintiff to the dentist; complemented Plaintiff's muscular definition and squeezed his arm (handling Plaintiff by the arm would have been necessary during transport regardless); and made further "lascivious statements" to Plaintiff. See ECF 39-1, Proposed Second Amended Complaint at ¶¶ 46 – 50.  The allegations fail to support a claim for the same reasons as stated above in that verbal harassment does not give rise to Section 1983 liability.  See Collins, 377 F.Supp.2d 241, 243 – 44 (D. Maine 2005); relying on Shabazz, 994 F.Supp. 460, 474 (S.D.N.Y. 1998).  Accordingly, Plaintiff's Proposed Second Amended Complaint fails to state a claim against Defendant Marvillie upon which relief may be granted and fails for futility.

**3. Plaintiff's Proposed Second Amended Complaint is barred by the Doctrine of Qualified Immunity.**

Claims against Defendants in their individual capacity as articulated in the Proposed Second Amended Complaint are barred by the Doctrine of Qualified Immunity; therefore, Plaintiff's Proposed Second Amended Complaint fails for futility.  The Doctrine of Qualified Immunity provides defendant public officials an immunity from suit and not a mere defense to

liability. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); see also Harlow v. Fitzgerald, 457 U.S.

800, 816 (1982) (recognizing that qualified immunity exists not only to shield officials from

liability for damages, but also to protect from "the general costs of subjecting officials to the risks

of trial—of discretionary action, and deterrence of able people from public service."). For this

reason, immunity is to be resolved at the earliest possible stage in litigation. Hunter v. Bryant, 502

U.S. 224, 227 (1991). The Harlow standard of qualified immunity precludes a plaintiff from

alleging the official's malice in order to defeat a qualified-immunity defense. Anderson v.

Creighton, 483 U.S. 635, 657 n.12 (1987).

The doctrine of qualified immunity precludes suits for money damages against state

officials "insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800

(1982). The First Circuit employs a two-step analysis to determine whether a plaintiff's claim may

breach a public official's qualified immunity. Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir.

2009) ("[W]e now adopt the Court's two-part test and abandon our previous usage of a three-step

analysis."). Accordingly, when making an objective reasonableness determination, a court must

decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a

constitutional right; and (2) if so, whether the right was "clearly established" at the time of the

defendant's alleged violation. Id. (citing Pearson v. Callahan, 555 U.S. 223 (2009)). The second

step, in turn, has two aspects: (a) the first focusing on the clarity of the law at the time of the alleged

civil rights violation and (b) the second focusing more concretely on the facts of the particular case

and whether a reasonable defendant would have understood that this conduct violated the plaintiffs'

constitutional rights. Id. (citing Anderson, 483 U.S. at 640). An officer's claim of qualified

immunity will be defeated if, "in light of pre-existing law" the unlawfulness of the officer's conduct

14

was "apparent." See Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Bilida v. McCleod, 211 F.3d 166, 174 (1st Cir. 2000) (noting that qualified immunity leaves "ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law."); DeAbadia v. Izquierdo Mova, 792 F.2d 1187, 1193 (1st Cir. 1986) ("Harlow demands not prescience, but subjective good faith.").

Applied herein, and as discussed above, Plaintiff's Proposed Second Amended Complaint goes no further than alleging general complaints against the named RIDOC Defendants – some of which amount to nothing more than a verbal encounter and none of which rise to the level of a constitutional claim or conduct that was "plainly incompetent" or performed in knowing violation of the law.

### *Conclusion*

For the reasons stated herein, Defendants respectfully request Plaintiff's Motion to Amend (ECF 39) be denied.

Respectfully Submitted,

RIDOC Defendants
by their attorney,

**PETER F. NERONHA
ATTORNEY GENERAL**

*/s/ Matthew I. Shaw*
*/s/ Justin J. Sullivan*

Matthew I. Shaw (#7325)
Special Assistant Attorney General
Justin J. Sullivan, Esq. (#9770)
Special Assistant Attorney General
Rhode Island Office of the Attorney General
150 S. Main St., Providence, RI 02903
Tel: (401) 274-4400 | Ext. 2226 / 2007
mshaw@riag.ri.gov
jjsullivan@riag.ri.gov

Dated: December 24, 2019

15

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on Tuesday, December 24, 2019 I filed the within document via the ECF filing system and that a copy is available for viewing and downloading.


            */s/ Taylor Poirier*

16